UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.* GEORGE MARKELSON, as Executor of the Estate of STEPHEN MARKELSON, Deceased, PETER NADLER, and LORRAINE WATERS,

Plaintiffs,

v.

DAVID B. SAMADI, M.D., DAVID B. SAMADI, M.D., P.C., LENOX HILL HOSPITAL, and NORTHWELL HEALTH, INC.,

Defendants.

17 Civ. 7986 (DLC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/7/2019

UNITED STATES OF AMERICA,

Plaintiff-Intervenor,

v.

LENOX HILL HOSPITAL, and NORTHWELL HEALTH, INC.,

Defendants.

17 Civ. 7986 (DLC)

**STIPULATION AND ORDER OF SETTLEMENT**

WHEREAS, this Stipulation and Order of Settlement ("Stipulation") is entered into by and among plaintiff the United States of America (the "United States" or "Government"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York; the relators George Markelson, as Executor of the Estate of Stephen Markelson, Peter Nadler, and Lorraine Waters ("Relators"), by their authorized representatives; and defendants Lenox Hill

Hospital ("Lenox Hill") and Northwell Health, Inc. ("Defendants," and together with the Government and Relators, the "Parties"), by their authorized representatives;

WHEREAS, on or about October 17, 2017, the Relators filed a complaint under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Defendants and the Chair of Urology at Lenox Hill from July 2013 through the date of the complaint, David B. Samadi, M.D. ("Samadi") (the "Relators' Initial Complaint"). The Relators' Initial Complaint includes allegations that, in violation of the FCA, Defendants and Samadi: (1) improperly billed the Federal health care programs for surgeries in which Samadi was not present for portions of the surgery; and (2) administered operating room services that were not medically necessary;

WHEREAS, on or about June 4, 2019, Relators filed an Amended Complaint (the "Relators' Amended Complaint"), asserting that Defendants submitted false claims because those claims had been referred to Defendants by Samadi at a time when his employment arrangement with Lenox Hill violated the Stark Law.

WHEREAS, the Government alleges that from July 1, 2013, until June 30, 2018 (the "Covered Period"), Defendants submitted false certifications to Medicare in conjunction with claims for reimbursement for: (1) endoscopic procedures and operations that were performed, at least in part, by medical residents whom Samadi supervised while he was simultaneously engaged in a different, complex surgery taking place in an adjacent operating room; (2) robotic surgeries for which, at some point during the surgery, Samadi left the operating room to supervise a different procedure or operation; (3) office-based and laboratory services that, although they had not been personally performed by Samadi, were used to calculate the incentive component of Samadi's compensation; (4) hospital and professional services provided in conjunction with Samadi's

endoscopic procedures and operations that were not medically reasonable and necessary; and (5) designated health services referred to Lenox Hill by Samadi when his compensation from Lenox Hill was not fair market value and his employment arrangement with Lenox Hill was not commercially reasonable without taking into account his referrals. The conduct described in this Paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, contemporaneous with the filing of this Stipulation, the Government is filing a Notice of Election to Intervene and Complaint-In-Intervention in the above-referenced *qui tam* action (the "Government Complaint"), in which it is asserting claims against Defendants under the FCA and common law for the Covered Conduct;

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against Defendants in the Government Complaint and the Relators' Amended Complaint, for the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED that:

**TERMS AND CONDITIONS**

1. The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2. Defendants admit, acknowledge, and accept responsibility for the following:

   a. From July 1, 2013, through June 30, 2018 (the "Covered Period"), Lenox Hill Hospital ("Lenox Hill") employed Dr. David B. Samadi ("Samadi") as Lenox Hill's Chair of Urology.

   b. Throughout the Covered Period, Defendant Northwell Health, Inc. ("Northwell") owned and controlled Northwell Healthcare, Inc., which is the immediate corporate parent of Lenox Hill.

c. Throughout the Covered Period, Lenox Hill made certifications to Medicare in order to participate in the Medicare program. As part of these certifications, Lenox Hill agreed to abide by the Medicare laws, regulations, and program instructions that applied to it. Lenox Hill also agreed in these certifications that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including the Stark Law), and on Lenox Hill's compliance with all applicable conditions of participation in Medicare.

d. Lenox Hill understood that the Stark Law prohibited it from submitting to Medicare claims for designated health services that were referred to it by a physician employee whose compensation exceeded fair market value and whose compensation arrangement was not commercially reasonable without taking into account the value of such referrals.

e. Throughout the Covered Period, Lenox Hill also made certifications to Medicare in conjunction with its claims for payment. As part of these certifications, Lenox Hill certified that the information in claims for payment was truthful and accurate and in compliance with applicable laws and regulations.

f. Lenox Hill understood that the Government relied on its certifications to Medicare in allowing Lenox Hill to participate in the Medicare program and when paying claims for reimbursement that Lenox Hill submitted to Medicare.

g. At the time of Samadi's recruitment and hiring, Defendants prepared internal documents that contained analyses of Samadi's future referrals to Lenox Hill for designated health services. These documents projected revenues of over four million dollars a year attributable to Samadi's future referrals. These documents also projected that, without taking into account these revenues, Lenox Hill would operate Samadi's medical practice at a loss of over one million dollars each year.

h. The Compensation Committee of the Northwell Board of Trustees ultimately approved total compensation for Samadi that exceeded by over two million dollars the total compensation fair market value benchmark determined by a third-party consultant hired by Lenox Hill. As relates to Samadi's compensation, meeting minutes of the Compensation Committee stated that "fair market value analysis would not be appropriate, and that Dr. Samadi's employment should be considered under the business judgment standard." Throughout the Covered Period, Samadi's clinical compensation was governed by this initial compensation arrangement.

i. Throughout the Covered Period, taking into account only the value of Samadi's own collections, Lenox Hill operated Samadi's medical practice at a loss of over one million dollars each year.

j. Throughout the Covered Period, Defendants submitted to Medicare several millions of dollars worth of claims for designated health services that had been referred to Lenox Hill by Samadi.

k. 42 C.F.R § 415.172(a) is a provision of Medicare's implementing regulations which is entitled "Physician fee schedule payment for services of teaching physicians." The regulation provides that, "[i]f a resident participates in a service furnished in a teaching setting," payment can be made pursuant to Medicare "only if a teaching physician is present during the key portion of any service or procedure for which payment is sought." The regulation further provides that: "[i]n the case of surgical, high-risk, or other complex procedures, the teaching physician must be present during all critical portions of the procedure and immediately available to furnish services during the entire service or procedure . . . . In the case of procedures performed through an endoscope, the teaching physician must be present during the entire viewing." (An endoscope is an illuminated optical, typically slender and tubular instrument used to look deep into the body and used in procedures called "endoscopy.")

l. The Medicare Claims Processing Manual states in Chapter 12, Section 100.1.2, under the heading "Surgery (Including Endoscopic Operations)," that "if the teaching surgeon is not physically present, he/she must be immediately available to return to the procedure, i.e., he/she cannot be performing another procedure. If circumstances prevent a teaching physician from being immediately available to assist with the procedure, then he/she must arrange for another qualified surgeon to be immediately available to assist with the procedure." Chapter 12, Section 100.1.2, also states that the "entire viewing" of an endoscopy procedure "starts at the time of the insertion of the endoscope and ends at the time of removal of the endoscope."

m. From October 2016 through at least July 1, 2017, Northwell had a policy entitled "Physicians at Teaching Hospitals (PATH) Supervision and Billing Policy" (the "PATH Policy"). The PATH Policy incorporates requirements from 42 C.F.R § 415.172(a) and Chapter 12, Section 100.1.2 of the Medicare Claims Processing Manual with respect to billing teaching physician claims to Medicare. The PATH Policy specifically states that

"[w]hen a Teaching Physician is not present during non-Critical non-Key Portions of the procedure and is participating in another surgical procedure, he/she must arrange for another qualified surgeon to immediately assist the resident in the other case should the need arise." The PATH Policy further states, under the section titled "Teaching Physician Requirements for Endoscopy," that "[t]he Teaching Physician must be present in the room for the entire viewing from the time the scope is inserted to the time the scope is removed."

n. During much of the Covered Period, Samadi performed surgical operations and procedures at Lenox Hill in the following manner:

(1) Samadi performed procedures in two operating rooms—OR 21 and OR 25, and sequenced the order of procedures such that portions of procedures performed in OR 21 overlapped with procedures performed in OR 25, and vice versa.

(2) During the portions of OR 21 and OR 25 procedures that overlapped, Samadi generally performed complex, robotic surgical procedures in OR 25, and residents assigned to be supervised by Samadi performed endoscopic operations and procedures in OR 21.

(3) When portions of an endoscopic procedure or operation in OR 21 overlapped with a surgery in OR 25, Samadi was not present in OR 21 throughout the entire period of time that the scope was inserted to the time the scope was removed.

(4) Samadi rarely designated another attending urologist to assist in OR 21 for the portions of the procedure that Samadi himself was absent from because of his participation in another surgical procedure occurring in OR 25.

(5) In instances when Samadi stepped away from a procedure in OR 25 to supervise a procedure in OR 21, Samadi would freeze or pause the robotic equipment in OR 25 and leave the patient under the care of the anesthesiologist, operating room staff, and, in some instances, a urology resident. No other attending urologist was present in OR 25 for the portion of time that Samadi was absent, even though the surgery had not yet concluded. Samadi also did not inform any other attending urologist of the specific times during a surgery when he was absent from OR 25.

(6) It was not Samadi's personal practice to inform his patients when their surgeries were scheduled to overlap with another of Samadi's scheduled surgeries.

o. The claims Lenox Hill submitted to Medicare for the procedures that occurred in OR 21 and OR 25 listed Samadi as the billing physician.

p. The majority of the procedures that occurred in OR 21 were endoscopic operations or procedures, and almost all of the procedures that occurred in OR 25 were surgical, high-risk, or other complex procedures performed utilizing a surgical robot.

q. Samadi performed cystograms and cystoscopies on patients in OR 21 in certain instances when it was not medically necessary to perform these procedures in an operating room setting. (A cystogram is an x-ray test to examine the bladder. A cystoscopy is an endoscopic procedure where a hollow tube with a lens is inserted into a patient's urethra and slowly advanced to the bladder to allow the physician to examine the lining of the bladder and the urethra.) Lenox Hill submitted to Medicare claims for payment associated with the services rendered by operating room staff in conjunction with these procedures.

r. Defendants failed to instruct either their own personnel or Samadi's medical biller, who provided the data used to calculate Samadi's incentive compensation, to exclude from the data collections associated with office-based designated health services that had not been personally performed by Samadi. As a result, and in conflict with the terms of Samadi's employment agreement with Lenox Hill, collections, totaling $100,777.66 and associated with non-personally performed office-based designated health services were included in calculating Samadi's incentive compensation.

s. Defendants' practices resulted in in the submission of several million dollars of inappropriate claims to Medicare.

3. Defendants shall pay to the Government within fourteen (14) business days of the Effective Date (defined below in Paragraph 30) the sum of $12,300,000 plus interest which shall be compounded annually at a rate of 2.77% accruing from October 7, 2019, to the date of the payment (the "Settlement Amount"), in accordance with instructions to be provided by the

Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York. Of the Settlement Amount, $7,058,601.44 constitutes restitution to the United States.

4. Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their current directors, officers, and employees in such investigation, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

5. Subject to the exceptions in Paragraphs 9 and 16 below (concerning excluded claims and bankruptcy proceedings), and conditioned upon Defendants' full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States pursuant to Paragraph 3 above, the United States releases Defendants, including their subsidiaries, divisions, corporate predecessors, successors, assigns and corporate affiliates, from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, and the common law theories of fraud, payment by mistake, and unjust enrichment. For avoidance of doubt, this Stipulation does not release any current or former officer, director, employee, or agent of Defendants from liability of any kind.

6. Defendants fully and finally release the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct and the United States' investigation, prosecution, and settlement thereof.

7. Conditioned on Defendants' timely payment of the full Settlement Amount pursuant to Paragraph 3 above, Relators, for themselves and their heirs, successors, attorneys, agents, and assigns, as well as any other person or entity acting on their behalf or asserting their rights, fully and finally release, waive, and forever discharge Defendants, including their subsidiaries and divisions, corporate predecessors, successors, assigns and corporate affiliates, as well as Defendants' current and former officers, directors, employees, attorneys, and other agents, from any claims or allegations that Relators have or may have on behalf of the Government under the FCA for the Covered Conduct, and from any liability, claims, demands, proceedings, liens, and causes of action of any kind or description, whether known or unknown, fixed or contingent, in law or in equity, in contract or tort, under any federal or state statute or regulation, or under common law, or that Relators otherwise would have standing to bring, against Defendants, including, without limitation, any liability arising from or relating to claims that Relators asserted or could have asserted against Defendants based on the Covered Conduct or the allegations in Relators' Initial Complaint and/or Relators' Amended Complaint; provided, however, that nothing in this Stipulation shall preclude Relators from seeking to recover their reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d); and further provided that nothing in this

Paragraph shall be deemed to release Relators' (1) medical malpractice, lack of informed consent, N.Y. Gen. Bus. Law § 349, punitive damages, and loss of services and consortium claims, to the extent asserted in the cases filed in New York Supreme Court, New York County, against Defendants, under Index Nos. 805463/2017 and 805464/2017 (the "State Malpractice Litigation"); and (2) claims asserted against David B. Samadi, M.D., and David B. Samadi, M.D., P.C. in the Relators' Amended Complaint.

8. In consideration of the execution of this Stipulation by Relators and Relators' release as set forth in Paragraph 7 above, Defendants, including their subsidiaries and divisions, corporate predecessors, successors, assigns and corporate affiliates, as well as Defendants' current and former officers, directors, employees, attorneys, and other agents, release Relators and their successors, heirs, assigns, attorneys, and other agents, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Defendants have against Relators related to or arising from the Relators' Initial Complaint and/or Relators' Amended Complaint. For avoidance of doubt, Defendants' release described in this Paragraph shall not apply to Samadi.

9. Notwithstanding the releases given in Paragraph 6 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

a. any liability arising under Title 26, United States Code (Internal Revenue Code);

b. any criminal liability;

c. except as explicitly stated in this Stipulation, any administrative liability, including but not limited to the mandatory or permissive exclusion from Federal health care programs (as defined in 42 U.S.C. §1320a-7b(f)) under 42 U.S.C. §1320a-7(a) (mandatory exclusion) or 42 U.S.C. §1320a-7(b) (permissive exclusion);

d. any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. any liability based upon obligations created by this Stipulation; and

f. any liability of individuals.

10. Defendants shall be in default of this Stipulation if Defendants fail to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if they fail to comply materially with any other term of this Stipulation that applies to them ("Default"). The Government shall provide written notice to Defendants of any Default in the manner set forth in Paragraph 29 below. Defendants shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default. In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning ten (10) calendar days after mailing of the notice of Default. In the event of an Uncured Default, Defendants shall agree to the entry of a consent judgment in favor of the United States against Defendants in the amount of the Settlement Amount as attached hereto as Exhibit A. The United States may also, at its option, (a) rescind this Stipulation and reinstate the claims asserted against Defendants in the

Government Complaint; (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing Defendants by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Defendants shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court. In addition, Defendants shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

11. Defendants, having truthfully admitted to the conduct set forth in Paragraph 2 hereof (the "Admitted Conduct"), agree they shall not, through their attorneys, agents, officers, or employees, make any public statement, including but not limited to, any statement in a press release, social media forum, or website, that contradicts or is inconsistent with the Admitted Conduct or suggests that the Admitted Conduct is not wrongful (a "Contradictory Statement"). Any Contradictory Statement by Defendants, their attorneys, agents, officers, or employees, shall constitute a violation of this Consent Order, thereby authorizing the Government to pursue any of the remedies set forth in Paragraph 10 hereof, or seek other appropriate relief from the Court. Before pursuing any remedy, the Government shall notify Defendants that it has determined that Defendants have made a Contradictory Statement. Upon receiving notice from the Government, Defendants may cure the violation by repudiating the Contradictory Statement in a press release

or other public statement within four business days. If Defendants learn of a potential Contradictory Statement by their attorneys, agents, officers, or employees, Defendants must notify the Government of the statement within 24 hours. The decision as to whether any statement constitutes a Contradictory Statement or will be imputed to Defendants for the purpose of this Consent Order, or whether Defendants adequately repudiated a Contradictory Statement to cure a violation of this Consent Order, shall be within the sole discretion of the Government. Consistent with this provision, Defendants may raise defenses and/or assert affirmative claims or defenses in any proceeding brought by private and/or public parties, so long as doing so would not contradict or be inconsistent with the Admitted Conduct.

12. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation; Relators agree and confirm that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

13. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

15. Defendants represent and warrant that they have reviewed their financial situation, that they are currently not insolvent as such term is defined in 11 U.S.C. § 101(32) and that they reasonably believe that they shall remain solvent following payment to the Government of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

16. If, within 91 days of the Effective Date of this Stipulation or of any payment made under this Stipulation, Defendants commence any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or part of Defendants' assets, Defendants agree as follows:

a. Defendants' obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position

in any such case, action, or proceeding that (i) Defendants' obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Defendants.

b. If any of Defendants' obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its option, may rescind the release in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the release in Paragraph 6 above. Defendants agree that (i) any such claim, action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and Defendants shall not argue or otherwise contend that the Government's claim, action, or proceeding is subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government within 60 calendar days of written notification to Defendants that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on October 17, 2017; and (iii) the Government has a valid claim

against Defendants in the amount of the Settlement Amount and the Government may pursue its claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

c. Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

17. In the event that the United States, pursuant to Paragraph 15 above (concerning disclosure of assets), opts to rescind this Stipulation, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 180 calendar days of written notification to Defendants that this Stipulation has been rescinded, and (b) are based on the Covered Conduct, except to the extent these defenses were available on October 17, 2017.

18. Defendants agree to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, including their present or former officers, directors, employees, and agents in connection with:

(1) the matters covered by this Stipulation;

(2) the United States' audit(s) and civil investigation(s) of matters covered by this Stipulation;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with matters covered by this Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Stipulation; and

(5) any payment Defendants make to the United States pursuant to this Stipulation and any payment Defendants may make to Relators, including expenses, costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs (as defined in this Paragraph) included in payments previously sought by

Defendants from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States, including the Department of Justice and/or the affected agencies, reserves its right to audit, examine, or re-examine Defendants' books and records and to disagree with any calculation submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amounts of such payments.

d. Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

19. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

20. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation; provided, however, nothing in this Stipulation shall preclude Relators from seeking to recover their expenses or attorneys' fees and costs from Defendants, pursuant to 31 U.S.C. § 3730(d).

21. Upon receipt of the payment described in Paragraph 3 above, the Government and Relators shall file pursuant to Rule 41(a)(1) a Joint Notice of Dismissal that will dismiss the Government Complaint, Relators' Initial Complaint, and Relators' Amended Complaint. As to the Government, the dismissal shall be with prejudice as to claims for the Covered Conduct that are being released pursuant to this Stipulation, and shall be without prejudice to all other claims and conduct. As to Relators, the dismissal shall be with prejudice as to all claims in Relators' Initial Complaint and Relators' Amended Complaint, except for Relators' claims pursuant to 31 U.S.C. § 3730(d) for: (i) expenses, costs, and attorneys' fees against Defendants; and (ii) a share of the Settlement Amount received by the Government, provided that such claims have not been resolved at the time of the filing of the Joint Notice of Dismissal. However, the Court shall retain jurisdiction over this Stipulation to enforce obligations pursuant to Paragraph 4 above.

22. Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

23. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties.

25. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

26. This Stipulation is binding on Defendants' successor entities.

27. This Stipulation is binding on Relators' successors, transferees, heirs, and assigns.

28. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

29. Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

AUSA Jessica Jean Hu
AUSA Arastu K. Chaudhury
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Email:

TO DEFENDANTS:

Stephen A. Warnke
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Stephen.Warnke@ropesgray.com

TO RELATORS:

Joseph Lanni, Esq.
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: (212) 869-3500
Fax: (212) 398-1532

30. The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

So ordered.
Denise Cote
11/5/19

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: New York, New York
October 29, 2019

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: ______________________________
JESSICA JEAN HU
ARASTU K. CHAUDHURY
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2726/2633
Fax: (212) 637-2717

*Attorneys for the United States of America*

**RELATORS**

Dated: New York, New York
October ___, 2019

By: ______________________________
GEORGE MARKELSON,
Executor, Estate of Stephen Markelson
*Relator*

By: ______________________________
PETER NADLER
*Relator*

By: ______________________________
LORRAINE WATERS
*Relator*

Dated: New York, New York
October 29, 2019

THE JACOB FUCHSBERG LAW FIRM, LLP

By: ______________________________
JOSEPH LANNI, Esq.
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: (212) 869-3500
Fax: (212) 398-1532

**RELATORS**

Dated: New York, New York
October ___, 2019

By: ______________________
GEORGE MARKELSON,
Executor, Estate of Stephen Markelson
*Relator*

By: ______________________
PETER NADLER
*Relator*

By: ______________________
LORRAINE WATERS
*Relator*

Dated: New York, New York
October 29, 2019

THE JACOB FUCHSBERG LAW FIRM, LLP

By: ______________________
JOSEPH LANNI, Esq.
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: (212) 869-3500
Fax: (212) 398-1532

**RELATORS**

Dated: New York, New York
October 30, 2019

By: ____________________________
GEORGE MARKELSON,
Executor, Estate of Stephen Markelson
*Relator*

By: ____________________________
PETER NADLER
*Relator*

By: ____________________________
LORRAINE WATERS
*Relator*

Dated: New York, New York
October 29, 2019

THE JACOB FUCHSBERG LAW FIRM, LLP

By: ____________________________
JOSEPH LANNI, Esq.
3 Park Avenue, 37th Floor
New York, New York 10016
Tel.: (212) 869-3500
Fax: (212) 398-1532

**RELATORS**

**Dated: New York, New York**
**October 30, 2019**

**By:** ____________________
**GEORGE MARKELSON,**
**Executor, Estate of Stephen Markelson**
***Relator***

**By:** ____________________
**PETER NADLER**
***Relator***

**By:** Lorraine Waters
**LORRAINE WATERS**
***Relator***

**Dated: New York, New York**
**October 29, 2019**

**THE JACOB FUCHSBERG LAW FIRM, LLP**

**By:** ____________________
**JOSEPH LANNI, Esq.**
**3 Park Avenue, 37th Floor**
**New York, New York 10016**
**Tel.: (212) 869-3500**
**Fax: (212) 398-1532**

GUTTMAN, BUSCHNER & BROOKS PLLC

By: ______________________

TRACI L. BUSCHNER
2000 P Street, N.W., Suite 300
Washington, D.C. 20036
Tel.: (202) 800-30001
Fax: (202) 827-0041

*Attorneys for Relators*

**DEFENDANTS**

Dated: New York, New York
October 29, 2019

ROPES & GRAY LLP

By: ______________________

STEPHEN A. WARNKE
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Tel.: (212) 241-0681
Stephen.Warnke@ropesgray.com
*Attorneys for Defendants*

SO ORDERED:

____________________________________

HONORABLE DENISE L. COTE
UNITED STATES DISTRICT JUDGE

Dated: _____________, 2019

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.* GEORGE MARKELSON, as Executor of the Estate of STEPHEN MARKELSON, Deceased, PETER NADLER, and LORRAINE WATERS,

Plaintiffs,

v.

DAVID B. SAMADI, M.D., DAVID B. SAMADI, M.D., P.C., LENOX HILL HOSPITAL, and NORTHWELL HEALTH, INC.,

Defendants.

17 Civ. 7986 (DLC)

UNITED STATES OF AMERICA,

Plaintiff-Intervenor,

v.

LENOX HILL HOSPITAL, and NORTHWELL HEALTH, INC.,

Defendants.

17 Civ. 7986 (DLC)

**JUDGMENT**

Upon the consent of plaintiff the United States of America and defendants Lenox Hill Hospital and Northwell Health, Inc., it is hereby

ORDERED, ADJUDGED and DECREED: that plaintiff the United States of America is awarded judgment in the amount of $12,300,000 against defendants Lenox Hill Hospital and Northwell Health, Inc., as well as post-judgment interest at the rate of 12% per annum compounded daily.

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: ______________________________
JESSICA JEAN HU
ARASTU K. CHAUDHURY
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2726/2633
Fax: (212) 637-2717

*Attorneys for the United States of America*

ROPES & GRAY LLP

By: ______________________________
STEPHEN A. WARNKE
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel.: (212) 241-0681
Stephen.Warnke@ropesgray.com

*Attorneys for Defendants*

SO ORDERED:

______________________________
HONORABLE DENISE L. COTE
UNITED STATES DISTRICT JUDGE

Dated: ____________, 2019